## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **SHELBY D. FRANKLIN**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>                    vs.<br><br>**MEDQ, INC.**,<br><br>    Defendant. | Case No._____<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Shelby D. Franklin ("Plaintiff"), brings this class action lawsuit on behalf of herself and on behalf of all others similarly situated ("Class Members" or the "Class") against Defendant medQ, Inc. ("Defendant" or "medQ") and alleges upon personal information and belief as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

### I.    INTRODUCTION

1.    Plaintiff brings this class action lawsuit against Defendant for its failure to safeguard and protect Plaintiff's and Class's highly sensitive personally identifiable information ("PII") and protected health information ("PHI"). As a result of Defendant's failure to implement adequate data security, the highly sensitive PII and PHI of approximately **54,353 individuals**, including their names, Social Security numbers, Driver's License numbers, dates of birth, health information, subscriber ID numbers, diagnoses, lab results, medications, other treatment information, health insurance and claim

1

information, provider names, and dates of treatment (collectively, "Personal Information") were **stolen** by an unauthorized criminal between December 20, 2023 through December 26, 2023 (the "Data Breach" or "Breach").[1] Now, Plaintiff and the Class are at an imminent and impending risk of harm for the rest of their lives.

2.      Defendant acquired, collected, and stored Plaintiff's and Class Members' Personal Information in connection with the services it provided. Therefore, at all relevant times, Defendant knew or should have known that Plaintiff's and Class Member's sensitive data, including their highly confidential PII/PHI would be stored on Defendant's networks.

3.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII/PHI, Defendant assumed legal and equitable duties to those individuals. These duties arose from state and federal statutes and regulations as well as common law principles.

4.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII/PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies and

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to  distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its  face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, *etc.*).

procedures regarding the encryption of data, even for internal use. As a result, the PII/PHI of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

## II.    THE PARTIES

5.    **Plaintiff Franklin** is a resident of Moore, Oklahoma and received a Notice of Data Breach Letter from Defendant advising her that her name, Social Security number, Driver's License number, date of birth, health information, subscriber ID number, diagnoses, lab results, medication, other treatment information, health insurance and claim information, provider names, and dates of treatment were compromised in the Data Breach.[2]

6.    Defendant **medQ, Inc.** is a corporation headquartered in Texas and has its principal place of business in Texas.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there

---

[2] *See* Exhibit 1 (Notice of Data Breach Letter).

are more than 100 members in the proposed class and at least one other Class Member is a citizen of a state different from Defendant.

8.    Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

9.    As previously stated, Defendant medQ, Inc. is a corporation headquartered in Texas and has its principal place of business in Texas. Defendant also has sufficient minimum contacts in Texas and has intentionally availed themselves of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within Texas.

10.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff' claims took place within the Houston Division of the Southern District of Texas, and Defendant do business and has its headquarters and principal place of business there.

### IV.    FACTUAL ALLEGATIONS

### A.  The Data Breach Exposing Plaintiff's and the Class's Personal Information.

11.    Defendant provides administrative services to healthcare entities.[3] As part of the services Defendant provides, it is entrusted with, and obligated to safeguard and protect the Personal Information of Plaintiff and the Class in accordance with all applicable laws.

12.    Third-party cybercriminals conducted a successful breach (hacking)

---

[3] *See* https://medQ.medQ.com/quick-overview/.

whereby they infiltrated Defendant's inadequately protected servers and gained unauthorized access to the confidential Personal Information of thousands of individuals whose data was stored within Defendant's systems.[4]

13.    According to medQ, on December 26, 2023, it discovered that a cybersecurity incident had taken place in which files were encrypted by an unauthorized actor on certain servers used by its software platform (the "medQ Platform") and hosted by a third-party data center.

14.    After an investigation, medQ learned that "some files were **copied** by an unauthorized third party from the medQ Platform" between December 20, 2023, through December 26, 2023.[5] In other words, Plaintiff's and the Class's PII and PHI was stolen in the Data Breach.

15.    Cybercriminals had nearly one week of unauthorized access to Plaintiff's and the Class's Personal Information that went unchecked and unnoticed.

16.    Despite learning of the Data Breach in December 2023, Defendant did not begin to notify victims of the Data Breach until in or around late February 2023.

17.    The types of Personal Information **accessed and copied** by the unauthorized actor included PII and PHI, as identified above.[6]

---

[4]    *See* **Exhibit 1** (Notice of Data Breach Letter); https://apps.web.maine.gov/online/aeviewer/ME/40/e9da097c-b100-41c8-b6ab-f806ac951bb9.shtml

[5] Ex. 1 (emphasis added).

[6] *See also* Exhibit 1.

18.    Upon information and belief, the unauthorized third-party cybercriminal(s) gained access to the Personal Information and engaged in (and will continue to engage in) misuse of the Personal Information, including marketing and selling Plaintiff's and Class members' Personal Information on the dark web.

19.    Plaintiff and Class Members' Personal Information was provided to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

20.    Accordingly, Defendant had obligations created by HIPAA, reasonable industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff's and Class members' Personal Information confidential and to protect such Personal Information from unauthorized access.

21.    Nevertheless, Defendant failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training their employees to identify threats and defend against them.

22.    The stolen Personal Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**B. Plaintiff Franklin's Individual Experience.**

23.    Plaintiff received a Notice Letter from Defendant dated February 23, 2024, informing her that her Personal Information including her name, Social Security number, Driver's License number, date of birth, health information, subscriber ID number,

diagnoses, lab results, medication, other treatment information, health insurance and claim information, provider names, and dates of treatment were compromised in the Data Breach were accessed and copied in the Data Breach.[7]

24.    Defendant was in possession of Plaintiff's Personal Information before, during, and after the Data Breach.

25.    Because of the Data Breach, there is no doubt Plaintiff's highly confidential Personal Information is in the hands of cyber criminals. Reason being, the Notice of Data Breach Letter not only disclosed that an unauthorized third-party had **accessed** Defendant's systems, but it confirmed that the unauthorized criminal actor **stole** highly sensitive PII and PHI.[8] As such, Plaintiff and the Class are imminently at risk of crippling future identity theft and fraud.

26.    As a result of the Data Breach, Plaintiff has already expended **<u>4 hours</u>** of her time and has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and reviewing account statements and other information.

27.    Plaintiff anticipates purchasing credit monitoring services in the near future due to Defendant's Data Breach.

28.    Plaintiff has also experienced spam emails and calls that she attributes to the

---

[7] *See* Exhibit 1 (Notice of Data Breach Letter).

[8] *Id.*

Breach. Prior to the Breach, Plaintiff was not experiencing spam calls and emails of this frequency. Although Plaintiff's phone number and email address were purportedly not exposed in the Data Breach, cybercriminals, like the ones who infiltrated medQ's servers, often create *fullz* packages, allowing them to combine data to use and sell for nefarious purposes.[9]

29.    Plaintiff places significant value in the security of her PII/PHI and does not readily disclose it.  To the best of her knowledge, Plaintiff has never before been a victim of a data breach. Plaintiff has also never knowingly transmitted unencrypted PII/PHI over the internet or any other unsecured source.

30.    Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII/PHI compromised by the Data Breach. Indeed, Defendant acknowledged the increased risk of future harm Plaintiff and the Class now face by offering complimentary credit monitoring services to Plaintiff and the Class.

31.    Knowing that thieves intentionally targeted and stole her PII/PHI, including her Social Security number and medical information, and knowing that her PII/PHI is in the hands of cybercriminals has caused Plaintiff great anxiety beyond mere worry. Specifically, Plaintiff has lost hours of sleep, is in a constant state of stress, is very frustrated, and is in a state of persistent worry now that her PII/PHI has been stolen.

---

[9] *See* https://medQ.pcworld.com/article/414992/all-about-your-fullz-and-how-hackers-turn-your-personal-data-into-dollars.html.

32.    Plaintiff has a continuing interest in ensuring that her PII/PHI, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's and the Class's PII/PHI will be wholly unprotected and at-risk of future data breaches.

33.    Plaintiff has suffered injuries directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Personal Information; (b) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by Plaintiff's Personal Information being placed in the hands of cyber criminals; (c) damages to and diminution in value of Plaintiff's Personal Information that was entrusted to Defendant for the sole purpose of obtaining services with the understanding that Defendant would safeguard this information against disclosure; (d) emotional distress caused from knowing criminals now have her confidential PII and PHI to use and disclose at their leisure; and (e) continued risk to Plaintiff's Personal Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information that was entrusted to Defendant.

**C. Defendant had an Obligation to Protect Personal Information Under the Law and the Applicable Standard of Care.**

34.    Upon information and belief, Defendant is covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for

the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

35.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information, including health information that is kept or transferred in electronic form.

36.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

37.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

38.    HIPAA's Security Rule requires Defendant to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by their workforce.

39.     HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

40.     Additionally, HIPAA requires Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

41.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

42.     Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

43.     Defendant is further required by various states' laws and regulations to protect Plaintiff's and Class members' Personal Information.

44.     Defendant owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Personal Information in its possession was adequately secured and protected.

45.     Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal Information in their possession, including adequately training its employees (and others who accessed Personal Information within its computer systems) on how to adequately protect Personal Information.

46.     Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its data security systems in a timely manner.

47.     Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

48.     Defendant owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal Information with Defendant.

49.     Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

50.     Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**D. Defendant was on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security.**

51.     Defendant was on notice that companies, including companies operating within and aiding the healthcare industry have been targets for cyberattacks.

52.     Defendant were on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[10]

53.     The American Medical Association ("AMA") has also warned companies about the importance of protecting patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[11]

54.     Defendant were also on notice of the importance of data encryption of Personal Information. Defendant knew they kept Personal Information in their email accounts and yet it appears Defendant did not encrypt these email accounts or the information contained within them.

---

[10] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://medQ.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[11] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://medQ.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

55.     The United States Department of Health and Human Services' Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[12]

56.     As a company operating within the healthcare sector, and a covered entity or business associate under HIPAA, Defendant should have known about its data security weaknesses and sought better protection for the Personal Information maintained on its systems and accumulating in its business email accounts.

### E. Cyber Criminals Will Use Plaintiff's and Class Members' Personal Information to Defraud Them.

57.     Plaintiff and Class members' Personal Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

---

[12]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://medQ.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

58.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[13] For example, with the Personal Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[14] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

59.    Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[15]

60.    For example, it is believed that certain Personal Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[16]

---

[13]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://medQ.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[14]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[15] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://medQ.gao.gov/assets/270/262904.htmlu.

[16]    *See*    https://medQ.engadget.com/stolen-data-used-for-unemployment-fraud-ring-

61.     This was a financially motivated Data Breach, as apparent from the cybercriminals copying the information off of Defendant's servers. The Personal Information exfiltrated in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

62.     These risks are both certainly impending and substantial. As the FTC has reported, **if hackers get access to personally identifiable information, they will use it**.[17]

63.     Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

64.     Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the

---

174618050.html; *see also* https://medQ.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

[17]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://medQ.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[18] *See Cases Currently Under Investigation,* U.S. DEP'T OF HEALTH & HUMAN SERVS.: BREACH PORTAL, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

United States in 2013…," which is more than identity thefts involving banking and finance, the government and the military, or education.[19]

65.    As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[20] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[21]

66.    If cyber criminals manage to steal financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant has exposed the Plaintiff and Class members.

67.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[22]

---

[19] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[20] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://medQ.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[21] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://medQ.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

[22] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://medQ.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

68.     With this Data Breach, identity thieves may have already started to prey on the victims, and one can reasonably anticipate this will continue.

69.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[23]

70.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

71.     Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a.     Trespass, damage to, and theft of their personal property including Personal Information;

b.     Improper disclosure of their Personal Information;

---

[23] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://medQ.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

c.       The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being placed in the hands of criminals and having been already misused;

d.       The imminent and certainly impending risk of having their Personal Information used against them by spam callers to defraud them;

e.       Damages flowing from Defendant' untimely and inadequate notification of the data breach;

f.       Loss of privacy suffered as a result of the Data Breach;

g.       Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.       Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.       The loss of use of and access to their credit, accounts, and/or funds;

j.       Damage to their credit due to fraudulent use of their Personal Information; and

k.       Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

72.     Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security

measures and safeguards. Defendant has shown itself to be incapable of protecting Plaintiff's and Class members' Personal Information.

73.    Plaintiff and Class members are desperately trying to mitigate the damage that Defendant has caused them but, given the Personal Information Defendant made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[24]

74.    None of this should have happened. The Data Breach was preventable.

**F.  Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal Information.**

75.    Data breaches are preventable.[25] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[26] she added that "[o]rganizations that

---

[24]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://medQ.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[25]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[26]*Id.* at 17.

collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[27]

76.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[28]

77.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

78.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the

---

[27]*Id.* at 28.

[28]*Id.*

system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[29]

79.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

80.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

81.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

---

[29] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://medQ.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

82.     Defendant failed to properly implement basic data security practices, including those set forth by the FTC.

83.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

84.     Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

85.     Plaintiff and Class members were required to surrender their Personal Information – including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information – and Defendant was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal Information.

86.     Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal Information.

87.     Defendant was at all times fully aware of their obligation to protect the Personal Information of Plaintiff and Class members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

88.     Defendant maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained unencrypted, in Defendant's systems and was otherwise maintained in a condition vulnerable to cyberattacks.

89.     Defendant knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

90.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal Information from those risks left that information in a dangerous condition.

91.     Defendant disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the

Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

92.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

93.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23.  Plaintiff asserts all claims on behalf of the Nationwide Class, defined as follows:

### Nationwide Class

All persons residing in the United States who received a Notice of Data Breach Letter from Defendant in or around February 2024.

94.    Plaintiff reserves the right to amend the above definitions or to propose alternative or add subclasses in subsequent pleadings and motions for class certification.

95.    The proposed Nationwide Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

96.    **Numerosity:** The proposed Class is believed to be so numerous that the joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical. Indeed, Defendant has disclosed there are over 50,000 Data Breach victims.

97.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give

rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal Information compromised in the same way by the same conduct of Defendant.

98.    **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

99.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

100.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those

questions predominate over any questions that may affect individual members of the Class.
Common questions for the Class include:

     a.    Whether Defendant engaged in the wrongful conduct alleged herein;

     b.    Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Personal Information;

     c.    Whether Defendant's systems and data security practices used to protect Plaintiff's and Class members' Personal Information violated the FTC Act, HIPAA, and/or state laws and/or Defendant' other duties discussed herein;

     d.    Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Personal Information, and whether it breached this duty;

     e.    Whether Defendant knew or should have known that its computer and network security systems and medQ Platform were vulnerable to a data breach;

     f.    Whether Defendant's conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

     g.    Whether Defendant breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Personal Information;

     h.    Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected

individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.     Whether Defendant continue to breach duties to Plaintiff and the Class;

j.     Whether Plaintiff and the Class suffered injury as a proximate result of Defendant' negligent actions or failures to act;

k.     Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.     Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.     Whether Defendant' actions alleged herein constitute gross negligence; and

n.     Whether Plaintiff and Class members are entitled to punitive damages.

## VI.   CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

101.  Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

102.    Defendant solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of its business.

103.    Upon accepting and storing the Personal Information of Plaintiff and Class members, Defendant undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

104.    Defendant had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

105.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and the Class members had no ability to protect their Personal Information that was in Defendant' possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

106.    Defendant was well aware of the fact that cybercriminals routinely target healthcare entities and entities supporting healthcare entities through cyberattacks in an attempt to steal sensitive personal and medical information.

107.    Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

108.   Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

109.   Defendant had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendant owed Plaintiff and the Class include:

     a.   To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal Information was adequately secured from impermissible release, disclosure, and publication;

     b.   To protect Plaintiff's and Class members' Personal Information in their possession by using reasonable and adequate security procedures and systems;

     c.   To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

30

d.    To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

110.   Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Personal Information that Plaintiff and the Class had entrusted to them.

111.   Defendant breached its duty of care by failing to adequately protect Plaintiff's and Class members' Personal Information. Defendant breached its duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in its possession;

b.    Failing to protect the Personal Information in its possession by using reasonable and adequate security procedures and systems;

c.    Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

d.    Failing to use adequate platform security systems;

e.    Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store Personal Information;

f.    Failing to adequately train their employees to not store Personal Information longer than absolutely necessary;

31

g.   Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information;

h.   Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.   Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal Information.

112.   Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

113.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

114.   Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal Information of Plaintiff and Class members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal Information of Plaintiff and Class members while it was within Defendant's possession and control.

115.   Further, through Defendant's failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps toward securing their Personal Information and mitigating damages.

116.   As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their

lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies. This is in addition to the identity theft and fraud Plaintiff alleged.

117.   Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

118.   The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

119.   In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under HIPAA and the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

120.   Defendant violated these statutes when they engaged in the actions and omissions alleged herein, and Plaintiff's and Class members' injuries were a direct and proximate result of Defendant' violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

121.   Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and the Class.

122.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also formed part of the basis of Defendant' duty in this regard.

123.    Defendant gathered and stored the Personal Information of Plaintiff and the Class as part of their business, which affects commerce.

124.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Personal Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

125.    Defendant breached its duties to Plaintiff and the Class under the FTC Act, and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal Information, and by failing to provide prompt and specific notice without reasonable delay.

126.    Plaintiff and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

127.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

128.    Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal Information.

129.    Additionally, Defendant had a duty to promptly notify victims of the Data Breach. Defendant did not begin notifying Plaintiff or Class members of the Data Breach until February 2024. Defendant, however, knew of the Data Breach by December 2023.

130.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

131.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

132.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant' negligence.

133.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

134.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

135.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

136.    Through the use of Defendant's services, Defendant received monetary benefits from Plaintiff and the Class.

137.    Defendant collected, maintained, and stored the Personal Information of Plaintiff and Class members and, as such, Defendant had direct knowledge of the monetary benefits conferred upon it.

138.    Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiff and the Class members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on HIPAA compliance and reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal Information.

139.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class members.

140.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

141.    Defendant, upon information and belief, have therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that they knew

would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its wrongful conduct.

142.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

**COUNT THREE**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

143.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

144.    Plaintiffs and Class Members are intended third-party beneficiaries of a contract entered into between Defendant and the healthcare entities (the "Healthcare Entities") Defendant serviced (the "contracting parties"). This included a contract entered into before the Data Breach to provide administrative services and securely store Plaintiff's and the Class's PII/PHI that Defendant obtained from the Healthcare Entities it serviced (the "Contract").

145.    On information and belief, that respective contract contained provisions requiring Defendant to protect the PII/PHI that the Healthcare Entities received and in turn, disclosed to Defendant, in order to provide services to the Healthcare Entities.

146.    On information and belief those provisions requiring Defendant to protect the PII/PHI it received from the Healthcare Entities were intentionally included for the

direct benefit of Plaintiffs and Class Members, such that Plaintiffs and Class Members are intended third-party beneficiaries of this contract and are therefore entitled to enforce them.

147.    Defendant breached the contract by not safeguarding Plaintiffs' and Class Members' PII/PHI and not utilizing adequate data security, as described herein, resulting in the Data Breach.

148.    Exposure, breach, and identity theft were the expected risks both contracting parties could foresee from the improper performance of the Contract.

149.    The injuries suffered by Plaintiffs and Class Members were the kind that proper performance was intended to prevent.

150.    As a direct and proximate result of Defendant's breaches, Plaintiffs and Class Members sustained actual losses and damages as described in detail herein.

151.    Accordingly, Plaintiffs and Class Members are entitled to damages in an amount to be determined at trial.

## COUNT FOUR
## DECLARATORY RELIEF
### (On Behalf of Plaintiff and the Nationwide Class)

152.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

153.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

154.    As previously alleged, Defendant entered into contracts which required Defendant to provide adequate security for the PII/PHI collected from Plaintiff and the Class.

155.   Defendant owed and still owes a duty of care to Plaintiff and Class members that require it to adequately secure Plaintiff's and Class members' PII/PHI.

156.   Upon reason and belief, Defendant still possess the PII/PHI of Plaintiff and Class members.

157.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class members.

158.   Since the Data Breach, Defendant has not substantively addressed any changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

159.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendant's insufficient data security is known to hackers, the PII/PHI in Defendant's possession is even more vulnerable to cyberattack.

160.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their PII/PHI and Defendant's failure to address the security failings that led to such exposure.

161.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

162.    Plaintiff and the Class, therefore, seek a declaration (1) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a.  Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant' systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendant segment data by, among other things, creating firewalls and access controls so that if one area of Defendant' systems is compromised, hackers cannot gain access to other portions of Defendant' systems;

e.  Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

f.  Ordering that Defendant conduct regular database scanning and security checks; and

g.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.   An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.   A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i.   Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant' systems on a periodic basis, and ordering Defendant to promptly correct any

problems or issues detected by such third-party security auditors;

ii.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii.    Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

iv.    Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant' systems is compromised, hackers cannot gain access to other portions of Defendant' systems;

v.    Ordering that Defendant cease transmitting Personal Information via unencrypted email;

vi.    Ordering that Defendant cease storing Personal Information in email accounts;

vii.    Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

viii.    Ordering that Defendant conduct regular database scanning and securing checks;

ix.    Ordering that Defendant routinely and continually conduct internal training and education to inform internal security

personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x.    Ordering Defendant to meaningfully educate current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

d.    An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.    An award of such other and further relief as this Court may deem just and proper.

## VIII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 5, 2024                       Respectfully submitted,

*/s/: William B. Federman*
William B. Federman,
Tex. Bar No. 00794935
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
P: (405) 235-1560 F: (405) 239-2112
wbf@federmanlaw.com

***Attorney for Plaintiff and Putative Class***